UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TIMBER SOURCE, LLC       *       CIVIL ACTION

VERSUS       *       NO: 06-9239

CAHABA VALLEY TIMBER CO.,       *       SECTION: "D"(3)
INC., ET AL

<u>**ORDER AND REASONS**</u>

Before the court is the following motions filed by Defendants,
Cahaba Valley Timber Company, Inc., Cahaba Valley Lumber, Inc.,
Cahaba Valley Mulch, Inc., George N. Yocum and James Yocum, Sr.:

    (1)    **"Motion to Dismiss Under Federal Rule of Civil
          Procedure 12(b)"** (Doc. No. 12); and

    (2)    **"Motion to Dismiss First Amended Complaint Under
          Federal Rule of Civil Procedure 12(b)"** (Doc. No.
          20).

Plaintiff, Timber Source, LLC, filed memoranda in opposition
to these motions. The motions, set for hearing on Wednesday,
March 14, 2007, are before the court on briefs, without oral
argument. Now, having considered the memoranda of counsel, the
record, and the applicable law, the court finds that the motions

should be denied.

## I.  Background

Plaintiff Timber Source is allegedly "a timber supplier who arranges for the importation of marine cargo and makes arrangements for the shipment inland, including arrangement of port fees, freight costs, documentation and freight handling." (*See* Complaint, ¶ 8). Defendant Cahaba Valley Timber Company, Inc. (Cahaba Timber) is allegedly "the operator of a lumber company in Alabama and is the purchaser of lumber acquired by [Timber Source]." (*Id*. at ¶9).

In this matter, Plaintiff alleges that it entered into a "Purchase Contract" with Defendant Cahaba Timber on or about February 1, 2005. (*See* Complaint, ¶12 and Purchase Contract attached to Complaint).[1] Plaintiff further alleges that under the terms of this Purchase Contract, Plaintiff was "to purchase a minimum of 61,056,000 board feet of precision cut and kiln dried pine lumber in ceratin dimensions" within a 36-month period, and "to provide for the delivery of the lumber to a United States port and arrange for cargo insurance and cost of freight at the port." (*Id*.).

---

[1]     This Purchase Contract was signed by Ivan Lopez as managing Member of Timber Source, LLC, and James A. Yocum, Jr. as President of Cahaba Valley Timber Co., Inc. (*See* Purchase Contract attached to original Complaint; Affidavit of Ivan Lopez, Doc. No. 22-2; and Affidavit of James A. Yocum, Jr., Doc. No. 25-2).

Plaintiff further alleges that while it has complied with the terms of the Purchase Contract, Defendant Cahaba Timber "has not complied with the terms of the Purchase Contact and has not provided payment as detailed in the Purchase Contract." (*See* Original Complaint at ¶14-15). As a result of this alleged non-compliance, Plaintiff has allegedly suffered damages, including "compensatory damages for the value of the lumber, loss of profit, and costs of freight forwarding, including insurance, freight handling and documentation," and "damages for non-pecuniary loss." (*See* Complaint at ¶ 16). Plaintiff sues Cahaba Timber for breach of contract. (*Id*. at ¶23).

Under a piercing of the corporate veil theory, Plaintiff also names as Defendants:  Cahaba Valley Lumber, Inc., Cahaba Valley Mulch, Inc., George N. Yocum (the alleged President of Cahaba Timber); and James Yocum, Sr.[2] (an alleged shareholder and/or guarantor of the Cahaba entities). (*Id* at ¶¶10 & 11). In its First Amended Complaint, Plaintiff's allegations against these Defendants include:

---

[2]     As previously noted, the subject Purchase Contract was ostensibly signed by James A. Yocum, Jr., who is not named as a Defendant in this matter. Defendants explain James Yocum, Sr. (who is a named Defendant) is the father of James A. Yocum, Jr. and George N. Yocum (also a named Defendant). (Defendants' Memo., Doc. No. 12-2, p. 2, and Affidavits of George N. Yocum and James A. Yocum, Sr. attached thereto).

18.

Upon information and belief, [George N.] Yocum, acting as President of Cahaba Timber, has transferred or is attempting to transfer assets from Cahaba Timber to other Cahaba entities.

19.

As a direct result of the liquidation of the assets of Cahaba Timber, Plaintiff has and/or will suffer damages including compensatory damages and damages for non-pecuniary loss.

20.

Upon information and belief, James Yocum, Sr. personally paid for the obligations of Cahaba in connection with this contract.[3]

21.

Timber Resources, Inc. submits that the various Cahaba entities co-mingled their funds and used personal and other corporate accounts to pay the debts of Cahaba Timber.[4]

. . .

24.

That the various Cahaba entities, in particular Cahaba Timber, Cahaba Lumber and CV Mulch, as well as James Yocum, Sr. and George N. Yocum, personally, have failed to follow proper corporate procedures and paid debts of each other indiscriminately and as such they are responsible for the obligations of Cahaba Timber to Plaintiff.

---

[3]     Paragraph 20 remains unchanged from the original Complaint.

[4]     Paragraph 21 remains unchanged from the original Complaint.

4

(*See* First Amended Complaint, ¶24).

Plaintiff alleges that "[t]his is an admiralty and maritime claim within the jurisdiction of the United States and this Honorable Court under Rule 9(h) of the Federal Rules of Civil Procedure.  Jurisdiction is based on 28 U.S.C. §1333 and the General Maritime Law of the united States." (Complaint at ¶1). Alternatively, Plaintiff claims that the court has diversity jurisdiction. (*Id*. at ¶ 6).

In their motions to dismiss, Defendants argue that the court should dismiss both Plaintiff's original Complaint and its First Amended Complaint because: the court lacks personal jurisdiction over the Defendants (who are non-residents of Louisiana); (2) the court lacks subject matter jurisdiction; (3) venue is improper as to the non-resident Defendants; (4) Plaintiff has failed to state a claim upon which relief may be granted against Cahaba Valley Lumber, Inc., Cahaba Valley Mulch, Inc., George N. Yocum, and James Yocum, Sr.; (5) Plaintiff has failed to name a person (James A. Yocum, Jr.) required for just adjudication; and (6) there has been improper service and improper service of process on Defendants, George N. Yocum and James A. Yocum, Sr.

## II.  Legal Analysis

### A.  Subject Matter Jurisdiction

Plaintiff, Timber Source, LLC. alleges that:

5

> [it] was and is now a limited liability
> company organized under and by virtue of the
> laws of Louisiana with its principal place of
> business at 200 Crofton Road, Kenner,
> Louisiana 70062.

(*See* First Amended Complaint, ¶I).

Defendants are all citizens of Alabama.   Thus, there is complete diversity between Plaintiff and Defendants.

To determine if the amount in controversy exceeds $75,000, the court looks to the Purchase Contract, which is the subject of Plaintiff's breach of contract claim.   Under this Purchase Contract, Cahaba Timer was to purchase "61,056,000 Board Feet of [precision cut and kiln dried pine timber in ceratin dimensions] within a 36 month period." (*See* ¶ 1 of Purchase Contract, attached to Plaintiffs' original Complaint).   The contract also sets forth a list of sale prices (ranging from $484.00 per 1,000 Board Feet to $565.00 per 1,000 Board Feet) based on the net measurements of boards purchased. (*Id*. at ¶ 3).   Based on the amount of product to be sold and the sales price of the product, the court concludes that the contract was worth over $75,000,[5] and thus the requisite

---

[5]     The court notes that in its opposition memorandum, Plaintiff asserts that:

> Assuming that Cahaba Timber met its contractual
> obligation to purchase 61,056,000 board feet of timber
> over three years, the Purchase Contract would be worth
> between roughly $29 million-$34 million depending upon
> the particular sizes of board purchased over the life
> of the contract.   Prior to breaching the contract,
> Cahaba purchased only approximately $200,000.00 worth

amount in controversy for diversity jurisdiction exists.[6]

## B.  Personal Jurisdiction over the Alabama Defendants

While personal jurisdiction may be either general or specific, Plaintiff has failed to allege general jurisdiction.  Thus, the court must determine if the court has specific jurisdiction over the Alabama Defendants.  A court may exercise specific jurisdiction over a nonresident defendant when the claim arises out of or relates to the defendant's contacts with the forum state. *Helicpteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

The subject Purchase Contract included the provision:  "Terms of Sale: C.I.F. any U.S. Gulf Port." (*See* Purchase Contract, ¶ 4). Ivan Lopez, the managing member of Timber Source explained the meaning of this provision as follows:

> ... the sale price included the cost of the timber, the freight and/or transport costs, and the cost of marine insurance to the port of discharge.  Once the timber reached the

_____

of timber from plaintiff.

(*See* Doc. No. 22, Opp. Memo. at p. 20; *see also* Lopez Affidavit, Doc. No. 22-2 and attachments thereto).

[6]     While Plaintiff also asserted in its Complaint jurisdiction based on 28 U.S.C. §1333 and the general maritime law, Plaintiff has apparently abandoned that jurisdictional basis because Plaintiff has not responded to that Defendants' argument that the subject purchase contract is not a maritime contract, and thus the court does not have subject matter jurisdiction based on admiralty.

> point of discharge, the responsibility shifted
> to Cahaba Timber to arrange and pay for all
> transportation and insurance for the timber to
> Cahaba Timber's facility in Selma, Alabama.

(Lopez Affidavit at ¶ 5).

Mr. Lopez also attests that Timber Source received five of the
six shipments of timber at the Port of New Orleans by vessel from
New Zealand. (*Id.* at ¶¶8-9). The remaining shipment arrived by
vessel at Los Angeles, California and thereafter was transshipped
by rail to New Orleans. (*Id.* at ¶9). Further,

> Upon arrival in New Orleans, each container
> was trucked to Timber Source's warehouse,
> located at 200 Crofton road, Kenner,
> Louisiana.
>
> When the containers arrived at Timber Source's
> warehouse in Kenner, Louisiana, the timber was
> unpacked and stored awaiting pick-up by Cahaba
> Timber.
>
> All shipments of timber that arrived at Timber
> Source's warehouse in Kenner, Louisiana were
> picked up for transport to Alabama at Cahaba
> Timber's direction and expense.

(Lopez Affidavit at ¶¶10-12).

James A. Yocum, Jr., who signed the subject Purchase Contract
for Cahaba Timber, acknowledges that the terms of the sale were
C.I.F. any U.S. Gulf Port. (*See* Affidavit of James A. Yocum, Jr.,
Doc. No. 25-2, at ¶19). Further, Mr. Yocum attests that:

> On behalf of Cahaba Timber, I negotiated the
> terms and conditions of the Purchase Contract
> with Ivan Lopez of Timber Source. In so

doing, I was aware [that] Timber Source's
principal business office was located in
Kenner, Louisiana, and that the Port of New
Orleans would be the likely port of discharge.

As President of Cahaba Timber, I had no
objection to shipment of the timber through
the Port of New Orleans.

As per the terms and conditions of the
Purchase Contract, the sale price included the
cost of the timber, the freight and/or
transport costs, and the cost of marine
insurance to the port of discharge. Once the
timber reached the point of discharge, the
obligation shifted to Cahaba Timber to arrange
and pay for all transportation and insurance
for the timber to be shipped to Cahaba
Timber's facility in Selma, Alabama.

Because Cahaba Timber did not own its own
fleet of trucks, Cahaba Timber utilized
flatbed trucks owned and/or operated by Cahaba
Mulch, [Cahaba Valley Services, Inc.]⁷ and
other outside vendors to tranship the timber
from Timber Source's facility in Kenner,
Louisiana to Cahaba Timber's facility in
Selma, Alabama.

(*Id.* at ¶¶20-23).

In their supplemental reply memorandum, Defendants argue that:

The timber purchase contract called only for
delivery C.I.F. to any U.S. Gulf Port, and
left subsequent transportation arrangements
entirely to the discretion of the purchaser.
These transhipping activities are of no
consequence to the jurisdictional analysis in
any event because they have nothing to do with
the **prospective** breach of contract made the

---

⁷    Cahaba Valley Services, Inc. is not named as a Defendant in this
matter.

> basis of plaintiff's action.  Timber Source's
> cause of action arises from Cahaba Timber's
> alleged failure to agree to accept *further*
> shipments after Cahaba Timber had accepted and
> paid for all shipments of timber procured and
> delivered to Louisiana.

(*See* Doc. No. 30, p. 2, emphasis added).[8]

However, Plaintiff denies that its breach of contract claim is

purely **prospective**, and argues that:

> [f]rom   the   inception   of   the   parties'
> performance   under   the   Purchase   Contract,
> Cahaba Timber failed to make payments in a
> timely manner in accordance with the terms and
> conditions  stated  in  Paragraph  5  [of  the
> Purchase Contract].[9]   Same is evident upon

---

[8]     Defendants also argue without any evidentiary support that:

After the contract proved to be unprofitable due to a
miscalculation of the terms of its contract with the
New Zealand supplier, Timber Source was unable to pay
its supplier and indicated that it would be unable to
perform under the contract and procured no further
timber for delivery to Cahaba Timber after June, 2005.

(*See* Doc. No. 30 at p. 2).

[9]     Paragraph 5 of the Purchase Contract states:

Payment Terms:  Upon Timber Source, or any of its
designated third party service and/or product
providers, delivering product to the port of origin
for export to the United States, Timber Source will
provide Cahaba, by fax or e-mail, an invoice which
will include a packing list detailing the product that
has been delivered for export.  **Cahaba will remit
payment of said invoice to Timber Source within Five,
(5), working days of the invoice date.**  In the event
Timber Source has not received payment within Five,
(5), working days of the invoice date, Cahaba shall
pay interest charges on all past due balances.  The
interest rate shall be based on the Wall Street
Journal Prime Rate, plus 1.25%.

(*See* Purchase Contract attached to Plaintiff's original Complaint).

>            review of the copies of the Timber Source's
>            invoices and defendants' checks received for
>            payment of same, which are attached to
>            plaintiff's Original Memorandum as Exhibits 1-
>            B and 1-C.[10]

(*See* Doc. No. 34 at p. 2).[11]

The court finds that nonresident Cahaba Timber did more than merely contract with Louisiana's Timber Source, and Cahaba Timber was more than a passive customer of Timber Source. Cahaba Timber physically came to Louisiana, on several occasions, to pick up timber and tranship it to Alabama (all in substantial and expected performance of the subject Purchase Contract). Thus, because Cahaba Timber's activity in Louisiana was purposeful and not fortuitous, the court finds that it would not be unfair or unreasonable to require Cahaba Timber to defend this matter in a Louisiana court. Thus, the court will exercise specific jurisdiction over Cahaba Timber.

----

[10]    The court notes that all of the invoices attached to Mr. Lopez's Affidavit are stamped "PAID"; however, Mr. Lopez attests that "[t]he payments were not made within (5) five working days of the invoice date as required under the Purchase Contract." (Lopez Affidavit at ¶ 16).

[11]    Plaintiff also argues without any evidentiary support that:

>            Defendants (*sic*) refusal to timely remit payment for
>            timber that was delivered under the contract was
>            significant in frustrating plaintiff's continued
>            supply of timber. In essence, by not timely remitting
>            payment as required by the contract, defendants were
>            reducing plaintiff's cashflow, thereby making it more
>            difficult to purchase timber from New Zealand for
>            defendants' account.

(*See* Doc. No. 34 at p. 2).

Bolstering a finding of specific jurisdiction are the following choice of law and forum selection provisions found in the Purchase Contract itself:

> This Contract shall be construed and governed by the Laws of the United States and otherwise under the Laws of the State of Louisiana, except for its conflict of law provisions.
>
> Should any dispute arise under this Contract, both parties undertake to attempt to resolve the dispute in good faith. In the event that the parties cannot reach an agreement within Thirty, (30), calendar days of the date of the dispute, the matter will be referred to a Louisiana Arbitrator.[12] If both parties do not accept the non-binding arbitration, the matter will then be referred to a Louisiana Court as applicable.

(*See* Purchase Contract at Section 8 (B) & (C)).

Further, because the court finds, at this juncture, that Plaintiff has sufficiently pled a cause of action against the other named Defendants (who were non-contracting parties) under a theory of piercing the corporate veil (as the court next discusses), the court also finds that, at this juncture, it will exercise personal

---

[12] Defendants make a stretch of an argument when they argue that this provision "pointedly does not require that the arbitration itself take place in [Louisiana]." (Defendants' Memo., Doc. 12-2, p. 10).

jurisdiction over these other non-contracting Defendants.[13]

## C.  Piercing the corporate veil

At this juncture, the court finds that Plaintiff has stated a cause of action against Cahaba Valley Lumber, Inc., Cahaba Valley Mulch, Inc., George N. Yocum, and James Yocum, Sr. under a theory of piercing the corporate veil based on: the Affidavit of James A. Yocum, Jr. (the former President of Cahaba Timber);[14] certain portions of the Affidavits of George N. Yocum and James A. Yocum, Sr. related to the identity of ownership, directors, officers and shareholders of various Cahaba entities;[15] and check payments made to Plaintiff by Cahaba Valley Wood LLC (the President, incorporator

---

[13]     "Federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."  *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)(footnote omitted).

"The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the *same entity*, the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe [v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945)] due process analysis."  *Id.* (citations omitted); *see also Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 412 n. 7 (5th Cir. 2004), *citing and quoting Patin*.

Here, the court has found that it has specific jurisdiction over Cahaba Timber.  Thus, the court will exercise personal jurisdiction over Cahaba Timber's ostensible alter egos, i.e., the non-contracting Defendants.

[14]     *See* Affidavit of James A. Yocum, Jr., Doc. No. 25-2.

[15]     *See* Affidavit of George N. Yocum and Affidavit of James A. Yocum, Sr., Docs. Nos. 12-3 and 12-4, respectively.

and sole shareholder of which is James A. Yocum, Sr.);[16] and an ostensibly personal check payment to Plaintiff by George N. Yocum.[17]

While George N. Yocum has attested in his Affidavit that Cahaba Timber (incorporated in 1993 as an Alabama corporation), Cahaba Lumber (incorporated in 1998 as an Alabama corporation) and Cahaba Mulch (incorporated in 2000 as an Alabama corporation) have always been operated as separate, independent corporations, the following portions of James A. Yocum, Jr.'s Affidavit create factual issues, at this stage, on the issue of whether or not the corporate veil of Cahaba Timber should be pierced:

9.

> Financing for the start-up of Cahaba Lumber was dependent on the assets of Cahaba Timber. Specifically, Cahaba Timber loaned $800,000.00 to Cahaba Lumber for its initial capitalization. In addition, Cahaba Lumber obtained a two million dollar industrial development bond. In order to obtain the bond, the assets of Cahaba Timber were cross-collateralized with Cahaba Lumber as security for the bond. The $800,000.00 loan from Cahaba Timber to Cahaba Lumber was never repaid.

. . .

---

[16]    *See* copies of check payments attached to Lopez Affidavit, Doc. No. 22-5, at pp. 1, 2, & 8. The court notes that while Plaintiff has named James Yocum, Sr. as a Defendant, Plaintiff has not named Cahaba Valley Wood LLC as a Defendant.

[17]    *Id.* at p. 4.

12.

Cahaba Timber was the sole customer of Cahaba
Lumber.  Thus, every log cut and processed
into finished lumber by Cahaba Lumber was sold
to Cahaba Timber, who would then assemble the
timber into wooden pallets for sale to third
parties.

13.

With the exception of one year, for the first
seven years of its existence, Cahaba Lumber
lost money.  Further, because Cahaba Lumber
was undercapitalized, it could not even obtain
credit to pay its suppliers.  Therefore,
Cahaba Timber was required to pre-pay many of
cahaba Lumber's vendor prices.

.  .  .

24.

Cahaba Timber, Cahaba Lumber, [Cahaba Valley
Services, Inc.] and Cahaba Mulch utilized a
common accountant, Charles West, who was
eventually nominated as a third director of
Cahaba Timber and Cahaba Lumber in 2005.

25.

Cahaba Timber, Cahaba Lumber and [Cahaba
Valley Services, Inc.] failed to follow the
requirements    of    corporate    affairs.
Specifically, Cahaba Timber, Cahaba Lumber
[Cahaba Valley Services, Inc.] failed to hold
regular shareholder and director meetings.  On
numerous occasions while I was President of
Cahaba Timber and [Cahaba Valley Services,
Inc.] and Vice-President of Cahaba Lumber,
purported minutes from shareholder and
directors meetings were drafted without any
meetings haven (*sic*) actually taken place.

15

26.

> My brother, George N. Yocum and I had complete administrative control over Cahaba Timber, Cahaba Lumber and [Cahaba Valley Services, Inc.]. My brother also had complete administrative control over Cahaba Mulch.

27.

> While I was President of Cahaba Timber and Vice-President of Cahaba Lumber, it would not be uncommon to have employees from Cahaba Timber working for Cahaba Lumber, and *vice versa*, in the event either company was short-staffed on a particular day.

(*See* Affidavit of James A. Yocum, Jr., Doc. No. 25-2, ¶¶ 24-27).

## D.  Venue

Under 28 U.S.C. §1391(a),

> A civil action wherein jurisdiction is founded only on diversity of citizenship" may, except as otherwise provided by law, be brought only in (1) a judicial district court where any defendant resides, if all defendants reside in the same State, (2) a judicial district court in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, *if there is no district in which the action may otherwise be brought.*

28 U.S.C. §1391(a)(italics added).

The court finds that venue is proper in the Eastern District of Louisiana under ¶1391(a)(2), because "a substantial part of the

16

events or omissions giving rise to the claim [i.e., breach of the Purchase Contract] occurred, or a substantial part of the property that is subject of the action is situated" here.   While the court finds that it has personal jurisdiction over Defendants, §1391(a)(3) is inapplicable because the action could have been brought in a judicial district in Alabama.

**E.   James A. Yocum, Jr. is not required to be named as a Defendant for just adjudication.**

When the subject Purchase Contract was signed by James A. Yocum, Jr. on January 27, 2005, James A. Yocum, Jr. was the President of Cahaba Timber.   He also owned 50% of the shares of Cahaba Timber and 50% shares of Cahaba Valley Lumber.

However, according to his brother, George Yocum, James A. Yocum, Jr. was ousted as president of Cahaba Timber on January 28, 2005.   (*See* Affidavit of George Yocum, Doc. No. 12-3, ¶22). Further, "Court proceedings were initiated and in June of 2005, James A. Yocum, Jr. was judicially enjoined from doing business of any kind on behalf of Cahaba Timber and Cahaba Lumber." *Id*. at ¶ 23.   A buy out of James A. Yocum, Jr. was finalized in January of 2006. *Id*. at ¶24.   Under that agreement, James Jr. transferred his 50% interests in Cahaba Timber and Cahaba Lumber to George Yocum. *Id*.   And James, Jr. acquired George Yocum's 50% interest in a separate corporation, Cahaba Valley Services, Inc. and other

17

substantial compensation.  *Id.*[18]

Under such circumstances, the court does not find that James A. Yocum, Jr. should be joined as an involuntary defendant, as Defendants argue should be done.  Rather, Defendants may file a third-party claim against him, if Defendants so elect to do so.

**F.   Service of the individual Defendants**

When Defendants filed their initial Motion to Dismiss on January 8, 2007, Defendants argued that:

> This matter should be dismissed ... against James Yocum, Sr. and George Yocum, individually.  Plaintiff has not served either of these defendants with a copy of a Summons and Complaint directed to them in their individual capacities as required by Rule 4 of the Federal Rules of Civil Procedure. According to the Complaint and the Docket Sheet in this matter, plaintiff requested the clerk of court to issue Summons only in the names of the corporations, Cahaba Valley Timber Co., Inc., Cahaba Valley Limber, Inc. and Cahaba Valley Mulch, Inc.  Plaintiff served the defendant corporations via personal service on their registered agent, George Yocum on November 1, 2006.  Plaintiff has not attempted service on George Yocum in his individual capacity or James Yocum, Sr., in his individual capacity, nor requested waiver

---

[18]   George Yocum also attests that:

In November of 2006, the assets of Cahaba Timber were acquired by its main competitor, PalletOne, the largest manufacturer of new pallets in the U.S., headquartered in Florida.  The proceeds of the sale went to lenders to pay transactional costs and Cahaba Valley's secured debt.

(Affidavit of George Yocum at ¶ 25).

of service as to these defendants.

(*See* Defendants' memo., Doc. No. 12-2, p. 16).

However, as reflected on the Docket Sheet, on January 8, 2007, Plaintiffs requested that summons of its First Amended Complaint (that has Plaintiff's original Complaint attached thereto) be issued to George N. Yocum and James Yocum, Sr., and the clerk of court issued said summons on January 11, 2007. (*See* Docket Sheet, Docs. Nos. 15 & 16). Thus, at this stage, the court will not dismiss these individual Defendants for lack of service or improper service.

### III.  Conclusion

For reasons set forth above, the court **DENIES** Defendants' **Motions to Dismiss (Docs. Nos. 12 and 20).**

New Orleans, Louisiana, this **21st** day of **March**, **2007**.


_____
A.J. McNAMARA
UNITED STATES DISTRICT JUDGE

19